MURPHY, J.
The respondent Stemland, at the time of the controversy which gave rise to this litigation was the owner and master of the fishing vessel “Excel.” Its crew consisted of four men.
In March of 1947, the appellant union demanded that respondent pay fifteen dollars ($15.00) per day to each of his crew for each day spent in readying the vessel to sail, if for any reason it did not put out to sea. This demand was refused.
Appellant is a trade union, made up of commercial fishermen. A percentage of the proceeds of the vessel’s catch is their compensation, after deduction for costs of the ship’s operation. What remains goes to the owner and master, who in this instance, are one and the same.
In March and April of 1947 the operators of the fishing fleet sought an increase in their percentage of the catch and a decrease in that of the crew members. The union representing its members resisted and collective bargaining was resorted to by the parties.
While negotiations were being carried on, the fleet was tied up in port, and the crew members worked at mending nets and other tasks preparatory to the next trip.
Since the next voyage was a matter of uncertainty, the union asked that each operator enter into an agreement to compensate each member of the crew at fifteen dollars ($15.00) per day for services while the vessel was in port. Under ordinary conditions the men received no additional compensation for such work.
A number of operators became signatories to such an agreement, and the union ordered its members not to work for any operator who refused to sign. Respondent Stemland refused.
However, his four crew members, also members of the union, continued to work for Stemland. Each was fined one hundred dollars ($100.00) for working on the vessel while it was on *933 the “unfair” list. The ‘‘Shark Committee” of the union also ruled respondent Stemland to be responsible for the collection of the fines imposed.
When the controversy was settled respondent Stemland wanted to go to sea. But he could not sail with his four crew members or any other union men without paying the fines or by guarantee of their payment. The latter he agreed in writing to do, and went to sea with his crew of four.
Upon their return the crew not having paid the fines the union sought to collect the four hundred dollars ($400.00) from the respondent Stemland. Upon his refusal to do so the union brought suit against him upon his written guarantee.
Trial by jury resulted in a verdict for respondent Stem-land. Thereafter judgment was entered for the defendant (respondent herein).
It is urged upon this appeal that the verdict of the jury is not supported by the evidence; that the verdict is contrary to law and the judge’s instructions; that the denial of appellant’s motion for judgment notwithstanding the verdict was erroneous; that the judgment of the court is contrary to law.
Two questions therefore present themselves upon this appeal.
1. Was the guarantee executed by respondent Stemland a primary or principal obligation, or merely a collateral one ?
2. Was the guarantee entered into under duress?
Whether the guarantee was a primary obligation or collateral thereo, was a fact to be resolved by the jury. Vide Harris v. Frank, 81 Cal. 280, 286 [22 P. 856] ; Ackley v. Prime, 99 Cal.App. 534 [278 P. 932]; Ingalls v. Bell (1941), 43 Cal.App.2d 356, 366 [110 P.2d 1068].
The court’s instruction upon this subject reads as follows:
“If you find that the guarantee signed by the defendant was executed after the plaintiff organization levied fines on the members of the defendant’s crew, and that the intent of the parties was that the defendant was to be liable if the crew members failed to pay the fines, and if you further find that Adolph Stemland did not receive some benefit or something of guarantee as a consideration for signing the guarantee, then, as a matter of law, the guarantee is a collateral and secondary obligation subordinate to the primary obligation of the crew members to pay the fines levied upon them, and any defenses available to the crew members would be available to Adolph Stemland. If, on the other hand, you find that Adolph Stem-land did receive some benefit or something of guarantee, then it *934 is the primary obligation of Adolph Stemland, and any defenses that might be available to the crew members are not available to Adolph Stemland. ’ ’
That this instruction constitutes a fair and adequate statement of the law is obvious and requires no further comment.
Adverting to the second question, namely the matter of duress, it is to be observed that the court’s instruction thereon is not as fully set forth as it well might have been." The court should have defined “duress” and amplified this instruction.
“Now, I instruct you that a threat to exercise a valid, legal right does not constitute menace or duress under the law of this State. As the union in this case had a legal right to call its men off the defendant’s boat, the threat to exercise such right does not constitute menace and duress. The question of whether the union practiced duress in this case is for you to decide from all the testimony introduced.”
However, its failure to do so is not error of such a prejudicial character as to create the necessity for reversal, for the following reasons:
Duress is a question of fact. The transcript discloses that the respondent was coerced into signing the guarantee, and the jury so determined the question by its verdict.
Payments of such a character as plaintiff and appellant required defendant and respondent to pay fall within that class which the law recognizes as exactions or illegal charges on the part of the payors. Such payments are made in apprehension and fear that business interests may suffer if they are not paid. Young v. Hoagland, 212 Cal. 426 [208 P. 996, 75 A.L.R. 654].
In the instant case respondent Stemland, facing the threat of a strike, signed the guarantee to prevent and safeguard his interests. There was no privity of contract between him and the union. He owed no duty to the union. A strike was not threatened because of poor worldng conditions, wages or hours. A strike was threatened unless respondent guaranteed an obligation which did not stem from him. The union levied a fine upon respondent’s crew for working on the vessel during a strike period and forced its payment by respondent upon the threat that if respondent did not pay, the union would not clear the crew, thus making it impossible for respondent to take his ship to sea with other ships of the fishing fleet.
It is to be noted that the union did not deny the respondent the crew for the reason that he had employed them during the *935 strike period. The union demanded that respondent pay the fine imposed as a condition of their further hire. This they had no legal right to do.
Thus it is apparent that this controversy is not the usual trade union conflict. Rather it represents a form of extortion which although not criminal in its character, would nevertheless if followed to its logical conclusion justify the “vilest blackmailer.” Vide March v. Bricklayers’ & P. Union, 79 Conn. 7 [63 A. 291, 118 Am.St.Rep. 127, 6 Ann.Cas. 848, 4 L.R.A.N.S. 1198].
For the foregoing reasons the judgment is affirmed.
Griffin, P. J., and Kaufman, J., concurred.