**HOLLINGSWORTH SOLDERLESS TERMINAL CO., a corporation, Plaintiff-Appellant,**

v.

**William TURLEY, an Individual; and Hoffman Electronics Corporation, a corporation, Defendants-Appellees.**

**No. 75–2500.**

United States Court of Appeals, Ninth Circuit.

June 2, 1980.

---

Joseph R. Evanns, Beverly Hills, Cal., for plaintiff-appellant.

Robert W. Fischer, Los Angeles, Cal., for defendants-appellees.

Before SNEED and KENNEDY, Circuit Judges, and KRAFT,* District Judge.

KENNEDY, Circuit Judge:

This diversity action principally concerns the circumstances in which California law permits a salesman who leaves his employer to solicit the employer's customers by using various kinds of information acquired in his

* Honorable C. William Kraft, Jr., Senior United States District Judge for the District of Pennsylvania, sitting by designation.

first position. Plaintiff-appellant Hollingsworth Solderless Terminal Company competes, in California and nationwide, with defendant-appellee Hoffman Electronics Corporation. Hoffman hired a former Hollingsworth salesman to work for it, and Hollingsworth then sued both Hoffman and the salesman, defendant-appellee William Turley. After some discovery, all parties filed for summary judgment and Hollingsworth moved for a preliminary injunction. The trial court ruled against Hollingsworth on all aspects of the case, and Hollingsworth now appeals.

We affirm portions of the district court's judgment, but we also hold that summary judgment should not have been granted as to most aspects of the action. We therefore remand these claims for further proceedings. Finally, we vacate the court's denial of plaintiff's motion for a preliminary injunction and remand for reconsideration in light of the principles discussed in this opinion.

*Facts*

We state the facts most favorably to Hollingsworth. Hollingsworth and Hoffman compete in the manufacture and sale of solderless terminals and associated tools. Solderless terminals are devices for making electrical connections mechanically, that is, without use of chemical bonding such as soldering. Hand tools, such as crimping tools, are used to effect solderless terminal connections; automatic tools can also be used in some circumstances.

Turley began working as a salesman with Hollingsworth on October 1, 1963. He had an exclusive sales territory and was paid a fixed salary plus a commission based on sales. Turley called on Hollingsworth's customers in his territory at various intervals depending on the customer's volume and needs. The initial meetings with a potential customer were usually conducted in

person. If a business purchased Hollingsworth's products, later contacts were mostly by telephone, although Turley at times took customers to lunch. The telephone calls were to obtain orders, show a continuing interest, and monitor customers' needs. Turley was encouraged to service existing customers and find new prospects.

At Hollingsworth, Turley acquired information concerning various aspects of his employer's operations. According to plaintiff, this information included: identities of customers, names of buying influences (agents) and their particular methods of doing business, particular requirements and characteristics of the customer, quantities of goods purchased and dates of purchases, prices charged, discount arrangements given to some customers,[1] and dates of calls upon the customers. Hollingsworth required salesmen to write down all relevant information regarding customers. According to Hollingsworth, through these and other efforts involving substantial amounts of time, effort, and money, it was able to develop a detailed customer information file. Salesmen were also given copies of invoices which reflected the actual prices charged to customers and the discount arrangement, indicated in a confidential code, given to that particular customer. At least one reason for this practice was to verify the accuracy of the data for purposes of paying salesmen their commission. According to Hollingsworth, salesmen were required to return these invoices to the company. Turley, like other salesmen, kept customer information on 3 × 5 cards.

Three years after Turley began work for Hollingsworth, he signed a document entitled "Employee's Restrictive Covenants." The agreement required that the information described above be kept confidential, that upon termination of employment the lists were to be returned, and that Turley

---

1. According to plaintiff, 20% of its customers accounted for about 80% of its business. As the record indicates, other customers were given various discount arrangements. The term "preferred" is used by Hollingsworth to refer to customers who bought more than $100 of Hollingsworth products per year.

would refrain from soliciting Hollingsworth's customers for one year.[2] The document recited that in consideration for these promises, Turley was to receive future employment, prospective assignments to work on confidential matters, and one dollar, and stated that Hollingsworth was reluctant to continue to employ Turley unless he signed the restrictive covenant. A notary's seal appeared next to Turley's signature at the end of the document and the word "Seal" appeared in brackets next to Turley's name. The agreement stated that it was to be construed under Pennsylvania law.

Turley resigned from his position with Hollingsworth in 1974. He turned in some of the cards but retained many of them together with invoices, printouts listing sales volume, and other documents.[3] After attempting to make a living for about three months in an unrelated field, Turley was hired by Hoffman as a salesman. Either shortly before or after hiring Turley, Hoffman was informed of the "Employee's Restrictive Covenants" which Turley had signed. Turley was nevertheless assigned to a territory he had worked for Hollingsworth. He called upon many of his former accounts and obtained business from several of them.

While with Hoffman, Turley allegedly created a customer list and information file on 4 x 6 cards based on his memory and the information retained from his employment with Hollingsworth. According to Hollingsworth, Turley used this information to obtain accounts for Hoffman. Plaintiff also claimed that many of these accounts had looked to plaintiff for the bulk of their needs for a number of years, and some or many of plaintiff's customers which had been serviced by Turley had not been approached by competitors prior to Turley's becoming an employee of Hoffman.

In 1973 Hoffman had hired two other former Hollingsworth salesmen, J. Donald Reed and Warren Smith. These two men were contacted by Hoffman while they were still employed by Hollingsworth. Both of them had signed restrictive covenants with Hollingsworth and both were eventually assigned by Hoffman to sales territories which included areas they had serviced while employed by Hollingsworth. One of the men, while still employed by Hollingsworth, discussed with Hoffman officials the volume of Hollingsworth's sales and furnished Hoffman with invoices showing the prices charged some of Hollingsworth's larger customers and prospects.[4]

Hollingsworth's action alleged: (1) Turley and Hoffman were liable in tort for unfair competition based on Turley's solicitation of Hollingsworth customers and use of confidential information; (2) Turley and Hoffman induced Hollingsworth's customers to breach their contracts with Hollingsworth; (3) Hoffman engaged in unfair competition by soliciting Hollingsworth employees in order obtain confidential information; (4) Turley breached the restrictive covenant he had signed while employed with Hollingsworth; and (5) Hoffman sold its products below cost for the purpose of stifling competition in violation of Cal.Bus. & Prof.Code § 17043 (West 1964). The dis-

---

**2.** Turley promised to "deliver and return to [Hollingsworth] all lists of customers . . . [and] price lists" upon termination of employment and to refrain from "directly or indirectly, compet[ing] with [Hollingsworth] or solicit[ing] or accept[ing] business (with respect to products or services competitive with those of [Hollingsworth]) from any of Hollingsworth's customers whom [Turley] knew, became acquainted with, called upon or had any contact with prior to the termination of employment." The agreement also required Turley to "keep confidential during and subsequent to the period of . . . employment . . . all in-

formation relating to [Hollingsworth's] business, . . . trade secrets, [and] its sources of supply or lists of customers . . . ."

**3.** At a deposition in connection with this lawsuit, Turley apparently returned a box of 3 × 5 cards.

**4.** Hoffman asserts this information confirmed what it already knew from other sources or was not useful in competing with Hollingsworth.

trict court granted defendants' motion for summary judgment and denied plaintiff's motion for a preliminary injunction.

The court held, among other things: "Any and all information acquired by Hoffman from [Turley] relating to Hollingsworth's business and customers is not confidential, proprietary or a trade secret of Hollingsworth." Among the district court's Findings of Fact were the following:

10. Hollingsworth terminal salesmen, including Mr. Turley (when he was employed by Hollingsworth), do not follow a prescribed route, calling on specified customers at regular intervals.

11. Hollingsworth terminal salesmen, including Mr. Turley, do not make deliveries of the items which they sell.

12. Hollingsworth terminal salesmen, including Mr. Turley, locate many customers on their own. The types of firms that purchase terminals are commonly known to the trade and the identities of these firms can be ascertained through sources which are available to the public.

13. Salesmen of terminals, including Mr. Turley, can learn the name of the purchasing influence of a potential customer from manufacturer's guides or by direct inquiry at the office of the potential customer.

14. There are a large number of firms competing in the same geographical areas for sales of terminals. Accordingly, such firms do not have any assurance that dealings with customers will continue, without interference. Purchasers of terminals frequently do business with more than one seller of such products.

15. The ability to sell terminals depends primarily upon price, quality, delivery and service and these factors vary among competitors.

16. Salesmen of terminals, including Mr. Turley, deal with employees of purchasers of such products who have been assigned the responsibility to make purchasing decisions among various competitors.

17. Purchasers of terminals purchase these products as they are needed, almost always reordering by phone.

18. Salesmen of terminals, including Mr. Turley, necessarily acquire, in carrying out the duties of their employment, information which is useful to them in their profession, including the following:

    a. Knowledge of the identity and particular characteristics of customers.

    b. Knowledge concerning the identities of buying influences for customers.

    c. Knowledge concerning the particular needs of customers.

    d. Knowledge concerning the dates and amounts of purchases made by customers.

    e. Knowledge concerning competitive prices for terminals and pricing and discount policies of sellers of terminals, sometimes through obtaining quotes of competitors from customers or prospects.

19. Hollingsworth terminal salesmen, including Mr. Turley, are compensated, in part, on a commission basis and, to confirm the accuracy of commissions paid to them, receive Salesman's Acknowledgment copies of invoices from their employers which contain information about customers.

*Applicable Law*

The law of California controls at least the tort aspects of Hollingsworth's claims, but the many California precedents do not provide clear standards for decision of this case. *See generally* Hays, *The California Law of Unfair Competition Takes a Turn— Against the Employer*, 41 Calif.L.Rev. 38 (1953); Hays, *Unfair Competition—Another Decade*, 51 Calif.L.Rev. 51 (1963).

■ California courts have recognized that a person has a substantial interest in the unrestrained pursuit of his livelihood and must, within limits, be allowed to change employers and compete with former

employers for available customers. As the court said in *Continental Car-Na-Var Corp. v. Moseley,* 24 Cal.2d 104, 110, 148 P.2d 9, 12–13 (1944):

> Equity will to the fullest extent protect the property rights of employers in their trade secrets and otherwise, but public policy and natural justice require that equity should . . . be solicitous for the right inherent in all people, not fettered by negative covenants upon their part to the contrary to follow any of the common occupations of life. . . . A former employee has the right to engage in a competitive business for himself and to enter into competition with his former employer, even for the business of those who had formerly been the customers of his former employer, provided such competition is fairly and legally conducted.

Moreover a salesman necessarily acquires some information about the employer's business and how to sell the employer's products to customers more effectively. He is not automatically barred from using this information in subsequent employment with a competitor. "Some knowledge gained by an employee is of such a general character that equity will not restrict its later use. . . . A salesman who leaves one employer has a right to enter the employment of a competitor. He necessarily is possessed of information gained in the earlier employment which will enable him to better succeed in later ones." *Mathews Paint Co. v. Seaside Paint and Lacquer Co.,* 148 Cal.App.2d 168, 171, 175, 306 P.2d 113, 115, 117 (1957) (quoting *California Intelligence Bureau v. Cunningham,* 83 Cal. App.2d 197, 203, 188 P.2d 303, 306 (1948)).

On the other hand, a person is not always free to solicit customers of a former employer or to use information acquired during his former employment. In *Empire Steam Laundry v. Lozier,* 165 Cal. 95, 130 P. 1180 (1913), the California Supreme Court held that in certain circumstances a court may enjoin an employee from unwarranted use or disclosure of the trade secrets and confidential information of his former employer, and that a customer list can be such a trade secret. *See generally* 7 B. Witkin, Summary of California Law §§ 82–88 (8th ed. 1974); 2 R. Callmann, The Law of Unfair Competition, Trademarks, and Monopolies § 54.2(c)(2) (3d ed. 1968). In *California Intelligence Bureau v. Cunningham,* 83 Cal. App.2d 197, 188 P.2d 303 (1948), the court, summarizing prior case law, said that injunctive relief is appropriate where:

> (1) the former employee is in possession of trade or business secrets or confidential information, or the like, not readily accessible to others; (2) the former employee solicits the customers of his former employer in a competing business with intent to injure his former employer's business; (3) the former employee solicits the customers of his former employer, who comprise a list of preferred customers whose trade is profitable to a supplier of a service, knowledge of whom is a trade secret and confidential; (4) one concern is usually patronized by a customer and the lists and names and addresses of the customers are considered secret and have the character of property; (5) there is an established business relationship between the customer and the former employer which, unless interfered with, normally continues.

*Id.* at 202, 188 P.2d at 306.[5] This statement was substantially adopted by the California Supreme Court in *Aetna Bldg. Maintenance Co. v. West,* 39 Cal.2d 198, 204–05, 246 P.2d

---

5. The court in *California Intelligence Bureau* also referred to Cal.Labor Code § 2860 (West 1971), which provides:

> Everything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment.

This section, by itself, is not helpful in deciding whether particular information is protectible as a trade secret, *King v. Pacific Vitamin Corp.,* 256 Cal.App.2d 841, 64 Cal.Rptr. 486 (1967), and courts protecting information as trade secrets have not relied on this section.

11, 15 (1952). Underlying it is a concern with the confidential nature of the information in question. Following the above passage, the court in *California Intelligence Bureau* stated: "The fundamental [test] is whether in a given case the knowledge gained by an employee is secret and confidential." 83 Cal.App.2d at 203, 188 P.2d at 306. The importance of confidentiality has been reaffirmed in subsequent cases. *See, e. g., Klamath-Orleans Lumber, Inc. v. Miller,* 87 Cal.App.3d 458, 464, 151 Cal.Rptr. 118, 120 (1978); *Greenly v. Cooper,* 77 Cal. App.3d 382, 391, 143 Cal.Rptr. 514, 520–21 (1978); *King v. Pacific Vitamin Corp.,* 256 Cal.App.2d 841, 845, 64 Cal.Rptr. 486, 487 (1967); *American Loan Corp. v. California Commercial Corp.,* 211 Cal.App.2d 515, 522–23, 27 Cal.Rptr. 243, 246–47 (1963); *Alex Foods, Inc. v. Metcalfe,* 137 Cal.App.2d 415, 426–27, 290 P.2d 646, 653–54 (1955). Although in most instances where information will be protectible as a trade secret all five of the circumstances described by the court in *Aetna* will be present, we think California law is best viewed as not requiring a plaintiff to prove all five to prevail. *See Klamath-Orleans, supra,* 87 Cal.App.3d at 464, 151 Cal.Rptr. at 120; *Greenly, supra,* 77 Cal.App.3d at 392 n.2, 143 Cal.Rptr. at 520 n.2; *Hays, supra,* 41 Calif.L.Rev. at 50–59; *Hays, supra,* 51 Calif.L.Rev. at 68–69. *See also Alex Foods, supra,* 137 Cal.App.2d at 426–27, 290 P.2d at 653–54; *Gloria Ice Cream & Milk Co. v. Cowan,* 2 Cal.2d 460, 41 P.2d 340 (1935) (identity of customers not secret, but injunction granted because of defendant's intent to injure plaintiff's business).

Many of the cases in which certain kinds of information have been protected have been classified as "route" cases. The court in *King, supra,* elaborated:

The law in this field has been developed in the so-called "route" cases. . . . . These were cases of employees who operated routes of customers whom they supplied with laundry and linen service, ice, bread, milk and similar products for their personal use or, in some cases, supplied customers at wholesale with ice or foodstuffs. They got the name "route" cases from the practice of making regular calls on the customers and the maintenance of a record of the customer's requirements. The salesman had the exclusive right to serve the customer on his route. The names and addresses of customers on the routes enabled one employee to take the place of another, either temporarily or permanently, without interruption of the service, and the friendly business relationship with the customers made for a continuation of the patronage along the route. These considerations which gave the employer an advantage over competitors, constituted business secrets which were entitled to protection.

256 Cal.App.2d at 845, 64 Cal.Rptr. at 488. The court in *Continental Car-Na-Var Corp., supra,* 24 Cal.2d at 109, 148 P.2d at 12, identified other factors characterizing the plaintiff-customer relationship in route cases:

1. "[T]he business of serving the customer is based upon regular calls at definite periods, establishing a business relationship between the customer and the company, which, unless interfered with, normally will continue. . . . Each sale is a distinct transaction, not necessarily implying that another will follow."

2. "[T]he services rendered or the products sold [are] essentially the same, and the quality of the service rendered is similar. In the case of a salesman in a commercial field, there is no assurance of an order unless he can satisfy the customer that his merchandise is better, cheaper or more salable than that of his competitor."

While the considerations which can support a finding that information is protectible may appear most often in businesses where personal services are provided or the salesmen follow a delivery route, the same principles are applicable whether or not a delivery route is involved. *See American Loan Corp., supra; State Farm Mut. Auto.*

*Ins. Co. v. Dempster,* 174 Cal.App.2d 418, 344 P.2d 821 (1959); *Reid v. Mass Co.,* 155 Cal.App.2d 293, 301, 318 P.2d 54, 60 (1957); *Alex Foods, supra; California Intelligence Bureau, supra.* A rule which focused on whether the employee was a delivery route salesman or a commercial salesman would distort analysis of the relevant considerations.

■ The conclusion that particular information constitutes a protectible trade secret because it is confidential requires examining a number of factors. Without attempting an exhaustive compilation, we discuss in the following paragraphs factors which California courts have found relevant.

■ (1) Perhaps the most important consideration is whether the information is readily accessible to a reasonably diligent competitor or salesman. *See, e. g., Klamath-Orleans, supra,* 87 Cal.App.3d at 464–65, 151 Cal.Rptr. at 121; *Fortna v. Martin,* 158 Cal.App.2d 634, 639–40, 323 P.2d 146, 149 (1958); *American Alloy Steel Corp. v. Ross,* 149 Cal.App.2d 215, 219–20, 308 P.2d 494, 497 (1957); *Alex Foods, supra,* 137 Cal. App.2d at 425, 428, 290 P.2d at 653, 654–55. Finding that information is readily accessible to competitors indicates the plaintiff did not reasonably spend a great deal of time or effort compiling the information, *cf. Klamath-Orleans, supra,*[6] that the plaintiff suffers no injury when a former employee uses the information since he or his new employer could easily discover it from other sources, and perhaps that the plaintiff and defendant are competing in an open market for commonly known customers. Where the plaintiff competes with other businesses for a customer's patronage, one can infer

the identity of that customer is common knowledge in the trade, *see Mathews Paint Co. v. Seaside Paint and Lacquer Co.,* 148 Cal.App.2d 168, 306 P.2d 113 (1957); *Alex Foods, supra; Avocado Sales Co. v. Wyse,* 122 Cal.App. 627, 10 P.2d 485 (1932); evidence showing that a customer of the plaintiff had not been contacted in the past by competitors might support a contrary inference.

Where customer lists are involved, the fact of ready accessibility is often inferred from evidence concerning whether the information is available in public directories such as telephone directories or more specialized trade directories. *See, e. g., Fortna, supra; Mathews Paint Co., supra.* Even if the names of plaintiff's customers appear in a public directory, however, those names may appear among the names of many other businesses which may be neither actual nor even potential customers of the plaintiff. Hence, it may be costly to parse from such a directory potentially profitable customers from entries not worth pursuing, *see Klamath-Orleans, supra.* This might be most true of a directory, such as a telephone book, which included diverse entries. Evidence concerning whether a reasonably diligent salesman could perceive a narrowing classification which reduces substantially the costs of identifying potential customers is thus relevant to determining accessibility. Indeed, if a high percentage of businesses contacted by a salesman while working for a new employer are the ones he serviced for a former employer, this may be evidence that solicitation of customers through public sources involves some additional costs. *See American Loan Corp., supra,* 211 Cal.App.2d at 523, 27 Cal.Rptr. at 248.

■ A list of plaintiff's customers may be a secret even when the general class of

---

6. Strictly speaking, it is probably not essential for the employer to demonstrate that the customer information was developed principally by its efforts, as opposed to the employee's independent efforts, in order to prevent the employee from using the information in a subsequent employment. *See* Cal.Labor Code § 2860 (West 1971); *Reid, supra,* 155 Cal.

App.2d at 293, 318 P.2d at 60. On the other hand, in many of the cases which have found information confidential one factor considered was whether it was largely the employer's time and efforts that produced the valuable information the employee was then attempting to use. *See, e. g., Klamath-Orleans, supra; Greenly, supra; King, supra.*

potential customers is obvious and readily accessible. In *Reid, supra,* for example, the court stated:

> Defendants argue that the information concerning plaintiffs' customers was not confidential since no lists were furnished to the salesmen and since each salesman used obvious methods in choosing prospective customers—telephone directory, newspaper, driving through a town and picking the best looking stores, et cetera. However, these sources would not disclose the persons who ultimately made up the list of plaintiffs' customers. Some of the merchants approached by plaintiffs' salesmen declined to purchase this type of advertising. It was the list of persons who *did* purchase plaintiffs' services that constituted confidential information.

155 Cal.App.2d at 301–02, 318 P.2d at 60. *See also California Intelligence Bureau, supra.* In *Reid* and *California Intelligence Bureau* the courts' emphasis on the obviousness of actual customers (and not potential customers) can be explained by the desire to protect the substantial effort of the plaintiff in creating a market for the relatively unique services or products offered. An additional possibility, however, is that a list of people who have already purchased a product is substantially more valuable than a list of people who only might be interested in purchasing the product. Such a showing, together with other facts, might justify an inference that the names of plaintiff's actual customers are protectible trade secrets.

Further, at least one court has affirmed a finding that customer information was not readily accessible information when, "although the identity of some of plaintiff's customers may have been easily ascertainable by competitors, it cannot be said that the entire—or even a majority—of the customers scattered throughout the nation were readily accessible to defendants here." *Klamath-Orleans, supra,* 87 Cal.App.3d at 464–65, 151 Cal.Rptr. at 121.

A finding of confidentiality may be proper, even if the customers' names are well known, if their special characteristics are important to the seller and not obvious. The plaintiff in *Greenly, supra,* was a mortgage loan broker. The court, noting that the customer list of home loan investors "contain[ed] other valuable information, e. g., areas in which a customer will or will not invest, the maximum amount of investment, and loan expiration dates (enabling one to solicit the customer for additional business when the loan expires)," 77 Cal. App.2d at 392, 143 Cal.Rptr. at 521, affirmed a finding that the information contained on the list was confidential. *Compare, e. g., Mathews Paint Co., supra; Fortna, supra* (characteristics of buyers, their special needs, and names of purchasing influences are obvious and could be determined by any prudent salesman calling on the company).

Finally, if the class of potential customers is common knowledge, protection of the information may be justified because of other considerations. In the core cases on delivery routes, where protection is given to customer lists, the names of potential users of milk or linen services are obvious; one need only consult a street directory or knock on the doors of people's homes. The facts that a person's or business' name appears in a public directory and that some identifiable subgroup in that list exists which could reasonably be identified as possible users of a product do not as a matter of law require a finding that a business' list of such customers is unprotectible. *See generally Hays, supra,* 51 Calif.L.Rev. at 52 ("The common denominator in these service cases is that although the identities and locations of the customers may be freely ascertainable, they are numerous and usually scattered, and it takes a substantial amount of time, effort, and expense to obtain these customers initially"). Other fac-

tors, to which we now turn, may justify relief.[7]

(2) Another relevant consideration is whether the customer's decision to purchase is influenced primarily by considerations such as price, quality, reliable delivery, and efficient service, as contrasted with considerations such as special needs or susceptibilities of which the employee or employer, through some effort, has knowledge. *See, e. g., Continental Car-Na-Var Corp., supra,* 24 Cal.2d at 109, 111, 148 P.2d at 12, 13; *Aetna, supra,* 39 Cal.2d at 205–06, 246 P.2d at 16. This consideration appears to be a foundation for the delivery route cases, since as we have noted, the identities of customers in many of the delivery route cases appears readily accessible to competitors. Where the former considerations influence the customer, the plaintiff is normally not prejudiced when a former employee solicits the same customers, since the customer is not as concerned with the identity of the salesman. *See Aetna, supra,* 39 Cal.2d at 205, 246 P.2d at 16. Where price, quality, delivery and service of competing products are comparable, perhaps one may infer that a customer's purchasing decisions are influenced to a greater extent by other considerations, and thus the former employee's solicitation unfairly prejudices the plaintiff.[8]

An allied inquiry was identified by the court in Aetna as whether "the established business relationship between the customer and the former employer would normally continue unless interfered with." 39 Cal.2d at 205, 246 P.2d at 15. In addition to the considerations discussed in the preceding paragraph, evidence that the plaintiff has been doing business over a period of time with a customer, that the customer has not been contacted in the past by competitors, or that even if contacted the customer continues to satisfy its requirements from the plaintiff, are facts which might justify an inference that the plaintiff's relationship with the customer normally would continue unless interfered with. Of course, absent some unfair practice, a business may not prohibit competitors from attempting to do business with its customers. *See, e. g., Continental Car-Na-Var Corp., supra.* Proving a stable and continuous relationship with a customer, however, strengthens the inference that the plaintiff is injured by the former employee's solicitation.

(3) A further consideration is whether, in addition to manifesting an intent to take business away from the plaintiff, the salesman or competitor has a purpose to injure the plaintiff's business. *See, e. g., Gloria Ice Cream Co., supra; Hays, supra,* 41 Calif. L.Rev. at 52. This factor seems unrelated to whether the information relating to a plaintiff's customers is a trade secret, but solicitation of a plaintiff's customers by a former employee who uses allegedly secret information is more likely to be enjoined, and use of the information prohibited, where the defendant makes unfair use of the information, even if its confidential nature is not as clearly shown.

*The District Court's Entry of Summary Judgment*

The above survey shows that a variety of findings regarding the nature of the information in question, the market in which the plaintiff and defendant compete, and the relationship between the plaintiff and its customers can lead to a conclusion that information should be protected as confidential or a trade secret, or that solicitation of a plaintiff's customers by a former em-

---

**7.** The intent of the employer that information remain confidential is not a controlling consideration under California law, but information which the employer considers secret is more likely to receive protection. Evidence that, for example, the employer required its salesmen to sign a confidentiality agreement is thus relevant to determining whether the information is protectible. *See Hays, supra,* 51 Calif.L.Rev. at 69–70.

**8.** The reasons for inferring prejudice to the employer are absent where the special needs or characteristics of a customer can be readily ascertained, since presumably any prudent competitor calling on the customer could discover the same information.

ployee constitutes an unfair competitive practice. This recognition, together with the principle that summary judgment should not be granted where contradictory inferences may reasonably be drawn from undisputed evidentiary facts, *see, e. g., United States v. Perry,* 431 F.2d 1020, 1022 (9th Cir. 1970), guides our evaluation of the district court's grant of summary judgment in this case.

■■ There are California cases in which the facts alleged were insufficient as a matter of law to support a finding that the information was confidential or that solicitation was an unfair trade practice. *See, e. g., Mathews Paint Co., supra* (complaint fails to allege that defendants acquired information not readily accessible to others; customers for seller of paints and lacquer in wholesale quantities obviously includes furniture refinishers and upholsterers); *Continental Car-Na-Var Corp., supra* (evidence undisputed that potential customers of floor cleaning and finishing business were commonly known in the trade); *Fortna, supra* (realtors and financial institutions obvious source of customer information for termite exterminator). *See also, e. g., Best Dairy Farms, Inc. v. Houchen,* 152 Mont. 194, 448 P.2d 158 (1968). In light of our analysis of California law, however, the materials advanced by Hollingsworth created genuine issues of material fact regarding whether the information in question was readily accessible, whether the purchasing decisions of terminal customers were influenced by the personality and style of the salesman more than price, quality, and ser-

vice, and whether the defendants had a purpose to injure plaintiff's business over and above lawful competitive intent.[9]

According to the affidavit of W. A. Harris, Vice-President of Sales for the Western Region of Hollingsworth, there is no directory containing the names of solderless terminal users. Based on personal knowledge, Harris also estimated that only 35%–40% of the firms listed in public records under relevant headings such as electrical equipment manufacturers use solderless terminals and that about 10% of solderless terminal users called upon by Hollingsworth salesmen became actual customers. The depositions and affidavits indicate that while Hollingsworth has several competitors, both in California and nationwide, there exists a genuine dispute whether some of plaintiff's customers had been contacted by other solderless terminal sellers prior to Turley's solicitations on behalf of Hoffman. Pl. Mot. Pr. Inj. 73; *e. g.* Deposition of William Turley 5, 26, 49 (Vol. 4); Deposition of Edward Morton 80–82; Deposition of Joseph Cottrell 62–63. Harris also stated in his affidavit that Hollingsworth had spent substantial amounts of time and money soliciting customers and acquiring knowledge of their names and characteristics, and that contacting potential customers sometimes involved approaches other than consulting public directories such as advertising or participating in trade exhibitions. In short, there are genuine issues of fact regarding the ease with which potential and actual terminal customers can be located and the advantage which use of another seller's customer

---

9. Defendant claims that some of the evidence relied on by plaintiff would be inadmissible at a trial, and thus that it cannot be considered in passing on the propriety of granting summary judgment. In general, only admissible evidence may properly be considered by a trial court in granting summary judgment. *See, e. g., United States v. Dibble,* 429 F.2d 598, 601–02 (9th Cir. 1970).

The district court, however, gave no indication that any of the affidavits or deposition material relied on by Hollingsworth were admissible or inadmissible. Indeed, the record of

the proceedings below indicates that the court considered all of the affidavits and depositions in making its ruling. Without excluding the possibility that some of the material contained in the record may ultimately not be admitted at trial, we do not think summary judgment was properly entered on the ground that the evidence relied on by Hollingsworth to show a genuine dispute of material fact was inadmissible. Moreover, in several instances the statements forming the basis for plaintiff's contentions were in response to questions asked by defendants' counsel.

list gives to a competitor. Similar factual issues exist regarding the price of Hollingsworth's products. There is evidence Hollingsworth sometimes quoted prices to potential and actual customers to be compared with those of other sellers, and that Hollingsworth and Hoffman exchanged outdated price lists at least once, although the record is unclear whether this exchange was authorized by the companies. Such a finding might undercut a claim that this information was secret. Moreover, defendants contend that the information was of no use since Hollingsworth subsequently changed its prices and deviates in unpredictable ways from its announced prices. These issues present genuine disputes to be resolved after further proceedings.

Genuine disputes also exist regarding whether some of the customers serviced by Turley during his employment with Hollingsworth had a well-established and lengthy relationship with Hollingsworth, based on reasons other than price, quality, delivery and service, before Turley solicited them on behalf of Hoffman. In its motion for a preliminary injunction, plaintiff alleges that the personal relation between the salesman and the customer vitally affects plaintiff's goodwill. Plaintiff explains:

> Plaintiff strives to build up a good image and create a feeling of trust and confidence in the salesman and the company on the part of the customer. Virtually the only contact which the customer has with plaintiff is through the salesman; trust in the salesman causes the customer to rely upon commitments made for plaintiff by the salesmen and involves a feeling by the customer that the salesman is honest and a good man to deal with.

Information regarding a customer's purchase history, claims plaintiff, enables salesmen to call upon the customer when it is ready to reorder, to suggest appropriate purchases, and to accommodate selling tactics to any special patterns of the customer. Such practices, claim Hollingsworth, are an important element of building and retaining goodwill and involve a substantial amount of a salesman's time. The deposition and affidavits in this case provide some factual basis for these assertions.

Defendants respond that the ability to sell terminals depends primarily on price, quality, delivery, and service, and that personal relations play little or no part in the purchasing decisions of customers. They contend Hollingsworth salesmen do not deliver the products they sell and that most terminal customers reorder by phone, both of which suggest the lack of any personal relationship. Hoffman finally notes that its prices are in general somewhat lower than those of Hollingsworth, and this is the principal reason why customers decided to buy from Hoffman. Defendants may be correct as a factual matter, and the issue may be ultimately resolved in their favor, but at this stage of the proceedings genuine disputes of material fact exist.

Similarly, questions of fact regarding Hoffman's purpose in hiring former Hollingsworth employees exist. The record indicates that it was not unusual for solderless terminal companies to hire former employees of other terminal companies. According to Hollingsworth, however, employment of Turley was part of a national campaign undertaken by Hoffman to hire salesmen from competitors for the purpose of securing the customers serviced by them. Hollingsworth asserts that when a Texas state court entered a preliminary injunction against Reed prohibiting him from soliciting customers he had called on while working for Hollingsworth or using the confidential information he acquired there, Hoffman fired Reed.

We recognize that no clear line distinguishing those cases where a defendant is entitled to judgment as a matter of law from those where genuine factual disputes remain emerges from the California precedents. The problem is more difficult where, as here, genuine disputes relate to facts which themselves are inferred from other disputed evidentiary facts. Never-

theless, especially in light of recent cases such as *Klamath-Orleans, supra,* and *Greenly, supra,* which protected customer information in contexts that could be thought of as commercial, "[w]e believe that summary judgment is inappropriate in this case, even though appellants' factual showing leaves something to be desired in both quality and quantity." *Arney v. United States,* 479 F.2d 653, 660 (9th Cir. 1973). *See generally Franklin Nat'l Bank v. L. B. Meadows & Co.,* 318 F.Supp. 1339, 1343–46 (E.D.N.Y. 1970) (Weinstein, J.).

*Inducing Breach of Contract; Interference with Prospective Business Advantage*

■ Hollingsworth contends that Hoffman and Turley impermissibly interfered with contracts between Hollingsworth and its solderless terminal customers. Hollingsworth does not claim that any written or oral contracts with customers existed beyond single purchase orders. Plaintiff claims from the fact that some of its customers had purchased primarily or exclusively from plaintiff for a period of time and had not been solicited by competitors, it is possible to find that these customers impliedly contracted to continue purchasing from the plaintiff. We reject this contention. We recognize that in conjunction with other factors not present in this case, a course of dealing between the parties can be relevant to inferring the existence of an implied contract. The single fact alleged by plaintiff, however, is as a matter of law an insufficient basis to permit a reasonable inference that customers had agreed contractually to purchase solderless terminals from Hollingsworth in the future.

Absent a contract between the plaintiff and a customer, solicitation by an employee of his former employer's customers will not be enjoined unless some type of unfair trade practice is shown, such as where trade secrets or confidential information is used in the solicitation. *Continental Car-Na-Var Corp., supra,* 24 Cal.2d at 110, 148 P.2d at 13; 4 B. Witkin, Summary of California Law § 396 (8th ed. 1974 & Supp.1978).

There is no evidence here of an attempt to discredit or destroy confidence in Hollingsworth's product such as would amount to unlawful interference with prospective business advantage. *Compare Ernst & Ernst v. Carlson,* 247 Cal.App.2d 125, 55 Cal.Rptr. 626 (1966) (attempt by accountant to discredit former employer). To prohibit a company from soliciting the customers of a competitor, even a competitor's longstanding customers, where such solicitation does not otherwise constitute an unfair trade practice, would be inconsistent with the balance between stability of contractual business relationships and encouragement of competition expressed in cases such as *Imperial Ice Co. v. Rossier,* 18 Cal.2d 33, 112 P.2d 631 (1941).

*Solicitation of Hollingsworth Employees*

The district court also granted summary judgment against plaintiff on its claim that Hoffman unlawfully solicited plaintiff's employees to leave plaintiff's employ. There is evidence the decisions of Reed and Smith to leave were influenced by demotions, reductions of their sales territories, or dissatisfaction with the compensation paid by Hollingsworth. We assume for purposes of decisions that Hoffman can be said to have solicited them to leave Hollingsworth and join its business.

■ Whether or not appellant has a viable claim depends on the trade secret issue discussed above. Mere solicitation of an employee, under no contract of employment, to leave and associate with a competing firm is not illegal. *See, e. g., Buxbom v. Smith,* 23 Cal.2d 535, 547, 145 P.2d 305, 310 (1944). "However, if either the defecting employee or the competitor . . . is guilty of some concomitant, unconscionable conduct, the injured former employer has a cause of action to recover for the detriment he has thereby suffered." *Diodes, Inc. v. Franzen,* 260 Cal.App.2d 244, 255, 67 Cal.Rptr. 19, 26 (1968). Thus, if there is a "misappropriation of trade secrets as a concomitant of the solicitation," *id.* at 256, 67 Cal.Rptr. at 26, relief would be

granted. Hence if the customer information which Reed and Turley communicated to Hoffman can be considered a trade secret, Hollingsworth is entitled to relief. We therefore reverse and remand this aspect of the case.

### Breach of the Employees' Restrictive Covenant

In addition to the tort claims discussed above, Hollingsworth also claims that Turley breached the contract entitled "Employee's Restrictive Covenants," in which he promised not to disclose Hollingsworth's trade secrets or confidential information, to return all customer information to Hollingsworth, and not to solicit Hollingsworth customers for a year following termination of his employment.

The district court found as a fact that "The document entitled 'EMPLOYEE'S RESTRICTIVE COVENANTS' was signed by Mr. Turley without any negotiation, arms-length or otherwise, with Hollingsworth. It was imposed on Mr. Turley as a condition to his continuing employment, without consideration to Mr. Turley for signing the document." C.T. 282. It held as conclusions of law:

6. The document entitled "EMPLOYEE'S RESTRICTIVE COVENANTS" is a contract of adhesion and was obtained through illegal business compulsion.

7. The document entitled "EMPLOYEE'S RESTRICTIVE COVENANTS" is unenforceable as against the public policy of the State of California.

C.T. 285. The contract stated that it was to be construed under the law of Pennsylvania, but the district court did not indicate whether it reached its conclusions on the basis of California or Pennsylvania law. We vacate and remand the court's entry of summary judgment against Hollingsworth.

■ We think the applicable California law is that "the employer will be able to

restrain by contract only that conduct of the former employee that would have been subject to judicial restraint under the law of unfair competition, absent the contract." *Hays, supra*, 51 Calif.L.Rev. at 69. *See also Swenson v. File*, 3 Cal.3d 389, 395, 475 P.2d 852, 856, 90 Cal.Rptr. 580, 584 (1970); *Golden State Linen Serv. v. Vidalin*, 69 Cal. App.3d 1, 9, 137 Cal.Rptr. 807, 812 (1977); *State Farm Mut. Auto. Ins. Co., supra*, 174 Cal.App.2d at 426–27, 344 P.2d at 826. Cal. Bus. & Prof.Code § 16600 (West 1964) provides that "Every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." [10] Hence, the restrictive covenant will not be given effect in the California courts if it violates a strong California public policy. *URY v. Jewelers Acceptance Corp.*, 227 Cal.App.2d 11, 38 Cal. Rptr. 376 (1964). In *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668, 97 Cal.Rptr. 811 (1971), where an employment contract provided for forfeiture of profit-sharing rights by an employee who resigned and then engaged in competition with the former employer, the court held that section 16600 does represent a strong public policy. *Id.* at 673, 97 Cal. Rptr. at 814. We conclude that if a California court would declare the restrictive covenant between Turley and Hollingsworth to violate section 16600, the court would not enforce the covenant even though it might be enforceable under Pennsylvania contract law.

■ On the other hand, if the information used by the former employee is confidential or his solicitation activity constitutes unfair competition, then contracts with language similar to that agreed to by Hollingsworth and Turley have been enforced by California courts. *See, e. g., Gordon v. Landau*, 49 Cal.2d 690, 321 P.2d 456 (1958); *Southern California Disinfecting Co. v. Lomkin*, 183 Cal.App.2d 431, 7 Cal.

---

**10.** This language encompasses the practices sought to be restrained by the Employee's Restrictive Covenants.

Rptr. 43 (1960); *State Farm Mut. Auto. Ins. Co., supra; Ingrassia v. Bailey,* 172 Cal. App.2d 117, 341 P.2d 370 (1959); *Gordon v. Wasserman,* 153 Cal.App.2d 328, 314 P.2d 759, 760–61 (1957); *Rossiter v. Thompson,* 66 Cal.App. 491, 226 P. 806 (1924); *Hays, supra,* 51 Calif.L.Rev. at 69–73. Since we have held summary judgment was not properly entered on the unfair competition claim, we cannot conclude at this time that the contract is unenforceable because of the public policy expressed in Cal.Bus. & Prof. Code § 16600.

■ These cases also indicate the district court erred in holding that the agreement was an unenforceable contract of adhesion and was obtained through illegal business compulsion. The sole case cited by defendants in support of the court's conclusion is *International Fisherman & Allied Workers v. Stemland,* 97 Cal.App.2d Supp. 931, 219 P.2d 554 (App.Dep't Super.Ct.1950), where a court held unenforceable an agreement imposed by a labor union on the employer of four workers to guarantee payment of a fine imposed on the workers by the union and without which the employer could not undertake a planned business venture. The disparate factual contexts of *Stemland* and this case indicate that the finding of duress there does not require such a finding here. For example, the reasons why use of confidential information and solicitation of customers of a former employer are sometimes prohibited were absent in *Stemland.* Requiring an employee to sign an agreement not to disclose confidential information of the employer or solicit customers dealing with the employer is clearly not per se illegal in California. Yet neither the district court nor the defendants have advanced any theory indicating that Turley's situation differed from those of the employees in the above cases in ways requiring a finding of duress as a matter of law, assuming the court ultimate-

ly finds the information confidential and the solicitations unfair. We therefore reverse the judgment of the district court on this issue.[11]

■ A final ground for finding the contract unenforceable was the supposed lack of consideration given for Turley's promise. The defendants apparently agree with Hollingsworth that the issue of consideration is governed by Pennsylvania law. On first analysis, there is considerable doubt whether this agreement would be enforceable under Pennsylvania law. While Pennsylvania courts enforce reasonable restrictive covenants as part of an initial employment agreement, when such an agreement is made at a later date the courts require some change in the employee's employment status. *See Jacobson & Co. v. International Environment Corp.,* 427 Pa. 439, 235 A.2d 612 (1967). The distinction emphasized in the Pennsylvania courts between restrictive covenants signed as part of the initial employment agreement and those signed at a later date without a change in the employee's employment status has been forcefully criticized, *see, e. g., Maintenance Specialties, Inc. v. Gottus,* 455 Pa. 327, 314 A.2d 279, 284–87 (1974) (dissent), but it nevertheless is the law of Pennsylvania. Without engaging in detailed comparison, the evidence advanced by Hollingsworth would not be sufficient under Pennsylvania law to show any change in employment status sufficient to support a finding that the restrictive covenant was enforceable. *See, e. g., John G. Bryant Co. v. Sling Testing & Repair, Inc.,* 471 Pa. 1, 369 A.2d 1164 (1977); *Maintenance Specialties, Inc., supra; Jacobson, supra; Capital Bakers, Inc. v. Townsend,* 426 Pa. 188, 231 A.2d 292 (1967).

A further difficulty remains, however. Under California tort law Turley, when he entered into Hollingsworth's employ, obliged himself not to disclose secrets or engage in unfair solicitation. It is unclear

---

11. As our discussion below of Pennsylvania cases indicates, we think the result would be the same under Pennsylvania law.

whether this duty, imposed by the tort law in California, would be sufficient under Pennsylvania law to make the restrictive covenants agreement enforceable as a subsequent written representation of an obligation entered into at the outset of the employment relationship. *See Jacobson, supra.* It is possible that Turley impliedly agreed at the outset of his employment to terms similar to those contained in the written agreement he subsequently signed. *See, e. g.,* Deposition of W. Harris 43–48; Deposition of John Wieland 59–60; Deposition of Joseph Cottrell 64–66. Moreover, the outcome of the consideration issue if California law is applicable is also uncertain, *see, e. g., Gordon v. Landau, supra.* We think it appropriate that the district court should have the opportunity to address this issue first should the enforceability of the contract become an issue on remand, and we therefore reverse and remand this portion of the court's judgment.

. Our decision not to resolve the potentially thorny choice of law and contracts questions presented here is influenced by our skepticism regarding the continuing importance of the contract claim in this lawsuit. If the district court on remand ultimately concludes that defendants did not engage in any acts of unfair competition, then enforcement of any of the material provisions in the contract would violate section 16600 of the Business and Professions Code, and the contract therefore would be unenforceable. Anything we might say at this point concerning consideration doctrine or whether California or Pennsylvania law applies would be unnecessary to resolution of the case. On the other hand, if the court ultimately concludes that the defendants engaged in unfair competition in ways which also would constitute a breach of the agreement, the only additional right or remedy which could be secured under the contract would be an award of attorneys fees. At that point, issues of consideration might become relevant, but they would arise in a context markedly different from that in which they now appear. As is clear from

our opinion, in California the tort and contract issues are closely related. Analysis of the consideration issue is best conducted in the first instance by the district court after it passes on plaintiff's tort claims in light of our opinion.

### Unlawful Price Competition

■ Hollingsworth also alleged that Hoffman injured its business by making sales below cost for the purpose of stifling competition in violation of Cal.Bus. & Prof. Code § 17043 (West 1964), which provides:

> It is unlawful for any person engaged in business within this State to sell any article or product at less than the cost thereof to such vendor, or to give away any article or product, for the purpose of injuring competitors or destroying competition.

Plaintiff's sole factual support for its claim is that prices quoted by Hoffman in a September, 1974 bid were almost identical to those quoted by Hollingsworth in a January, 1972 price list. The evidence presented showed that, in general, Hoffman's terminal prices were lower than Hollingsworth's prices. Plaintiff argues that the district court should have inferred the possibility of sales below cost. The facts alleged by plaintiff were insufficient to create a genuine dispute whether Hoffman illegally sold its products below its costs. Summary judgment was properly entered against Hollingsworth on this claim.

### Preliminary Injunction

In addition to granting defendants' motion for summary judgment, the district court also denied plaintiff's motion for a preliminary injunction. We think the district court should have an opportunity to reevaluate this issue, should plaintiff after remand seek a preliminary injunction. The district court's view of the applicable law, and possibly of the facts, may differ in light of our opinion. Accordingly, without expressing any disagreement with the result reached by the court, we vacate its denial of plaintiff's motion for a preliminary injunc-

tion. *See Lane Bryant, Inc. v. Maternity Lane, Ltd.*, 173 F.2d 559, 565 (9th Cir. 1949).

AFFIRMED in part, REVERSED and REMANDED in part.