60 F.3d 832
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 ARMED FORCES COMMUNICATIONS, Inc.; Linda K. Cardoso,
Plaintiffs-Counter-Defendants-Appellees,
v.
CASS COMMUNICATIONS, INC., Defendant-Counter-Claimant-Appellant.
 Nos. 93-56373, 94-55336.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 6, 1995.
Decided July 5, 1995.
 
 Before: WALLACE, Chief Judge, HUG and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In 1984, Cass Communications, Inc. ("Cass") and Linda Cardoso ("Cardoso") entered into an employment contract that contained a covenant not to compete. Eight years later, Cardoso left Cass to work for a competitor, Armed Forces Communications, Inc. ("AFCI"), and filed a declaratory action claiming that the non-competition agreement was invalid. The district court, applying California law, determined that the agreement would preclude Cardoso from practicing her profession and therefore was unenforceable as against California public policy. Cass appealed.
 
 
 3
 Cass removed this action to federal court pursuant to 28 U.S.C. Sec. 1441. The district court properly exercised diversity jurisdiction under 28 U.S.C. Sec. 1332, because the parties are citizens of different states and the amount in controversy exceeds $50,000. The district court's final judgment was entered on August 6, 1993, and Cass filed a timely notice of appeal on August 31, 1993. Fed.R.App.P. 4(a). We affirm.
 
 I.
 
 4
 The district court's decision to apply California law rather than Illinois law as designated in the agreement's choice of law provision, is a question of law reviewable de novo. Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1505 (9th Cir.1993); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 641 (9th Cir.1988).
 
 
 5
 The court's finding that the covenant not to compete was invalid under California law involves statutory interpretation and is also subject to de novo review. State Farm Mut. Auto. Ins. Co. v. Davis, 937 F.2d 1415, 1418 (9th Cir.1991). The factual determinations underlying the court's statutory interpretation are entitled to a clearly erroneous standard of review. Nevill v. Shell Oil Co., 835 F.2d 209, 211 (9th Cir.1987).
 
 
 6
 Whether the district court misinterpreted state law when it disallowed Cass's supplemental discovery request is a question of law subject to de novo review. Waggoner, 991 F.2d at 1505. If the court properly applied state law, its decision to limit discovery is a discretionary determination which may not be reversed absent an abuse of discretion. Qualls v. Blue Cross of Calif., 22 F.3d 839, 844 (9th Cir.1994); Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir.1991).
 
 II.
 
 7
 Because this is a diversity action, the district court was required to apply California's conflict-of-law rules to determine what state's substantive law governed the dispute. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941); Sims Snowboards, Inc. v. Kelly, 863 F.2d 643, 645 (9th Cir.1988). Under California law, a court cannot give force to a choice of law provision if the contract includes clauses that "violate a strong California public policy." Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 97 Cal.Rptr. 811, 814 (Ct.App.1971); see also Restatement (Second) of Conflicts of Law Sec. 187 (1971). The district court determined that the non-competition clause violated a strong public policy embodied in Cal.Bus. & Prof.Code Sec. 16600.[1] Thus, the court ruled that California law applied to the issues in the case.
 
 
 8
 Cass argues that the district court's decision was flawed because the court failed "to analyze and compare the law and relative public policies of Illinois and California." This error was caused, according to Cass, by the court's misinterpretation of Campbell v. Trustees of Leland Stanford Jr. College, 817 F.2d 499 (9th Cir.1987); Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324 (9th Cir.1980), and Frame, 97 Cal.Rptr. at 811. Cass contends that these cases involved covenants that "completely precluded departing employees from competing with their former employers," while the restraint Cass sought was only a partial restraint, in that it did not completely prevent Cardoso from pursuing her profession. Arguing that its limited non-competition agreement does not run counter to "strong California policy," Cass claims the district court erred by applying California law rather than Illinois law as selected by the parties.
 
 
 9
 The linchpin of the district court's decision, therefore, is its definition of Cardoso's profession as "placing ads for the movie studios in the college, high school and military submarkets." It is upon this determination that much of the rest of the court's decision depends--if sound, then the remainder of the court's rulings are also correct.
 
 
 10
 Cass claims that the district court's definition ignored undisputed evidence, in particular Cardoso's own admissions. Cardoso testified that she was "in the business of assisting entertainment companies, principally movie studios, record companies, home video distributors, and television networks." Thus, Cass argues that Cardoso's own definition of her profession was broader than the court's.
 
 
 11
 However, Cardoso also testified that her "principal market was the collegiate market for motion pictures." The district court noted that Cardoso's education and prior work experience focused on marketing and distributing movies. Also, Cardoso's movie studio customers testified that her expertise in marketing movies to college age viewers is what drew them to her. Given this evidence, the district court's determination that "Cardoso has 'devoted all of [her] energy to a specialty within [her] profession' " (ER 82, p. 7, quoting Campbell, 817 F.2d at 503) is not clearly erroneous; the court properly declined to apply the choice of law clause and ruled that California law governed the employment contract.
 
 III.
 
 12
 Cass argues that the district court erred by failing to uphold the non-competition agreement as a "reasonable" restraint. This error was allegedly caused by (1) the court's failure to balance Cass's interests against Cardoso's; (2) the court's erroneous definition of Cardoso's profession; and (3) the court's flawed "market share" analysis.
 
 
 13
 First, Cass argues that the district court "never acknowledged Cass's interest in protecting its equity in customer relationships developed at substantial long-term expense and effort." Cass reiterates its argument that it is necessary to balance the parties' competing interests in order to evaluate the reasonableness of the restraint.
 
 
 14
 However, the balancing inquiry proposed by Cass has no place in the interpretation of Sec. 16600. See, e.g., Campbell, 817 F.2d at 502 ("[T]he California Legislature rejected the common-law rule that 'reasonable' restraints of trade are generally enforceable."); Bosley Medical Group v. Abramson, 207 Cal.Rptr. 477, 480 (Ct.App.1984) ("Although at common law and in many states, a restraint on the practice of a trade or occupation, even as applied to a former employee, is valid if reasonable ..., the so-called rule of reasonableness was rejected by this state in 1872.").
 
 
 15
 Once again, the key to the court's decision on this issue is its definition of Cardoso's profession. An examination of the non-competition clause in light of the court's definition demonstrates that the restraint is prohibited by Sec. 16600. As noted in Bosley, 207 Cal.Rptr. at 480, the rule of reason does not apply to covenants not to compete that are covered by Sec. 16600. Thus, since the district court did not improperly define Cardoso's profession, Cass's argument that the restraint is reasonable also fails.
 
 
 16
 The district court's use of market share to determine the impact of the restraint on Cardoso's profession also draws fire from Cass. On one hand, Cass urges this Court to hold that the non-competition agreement was only "partial," or only had a limited impact on Cardoso's ability to practice her profession. However, Cass goes on to contend that the district court erred by using a market share analysis to evaluate the restraint's impact on Cardoso.
 
 
 17
 Cass's argument ignores the fact that the covenant not to compete purported to restrict Cardoso's ability to conduct business with specified customers. In order to determine whether the restraint had a "small or limited" effect on Cardoso's ability to practice her profession, the district court necessarily had to examine the relative market share of those customers. After evaluating the advertising expenditures of the four studios in the high school and college markets, the district court found that the restraint would preclude Cardoso from pursuing an average of 66.44% of her profession. It was not error for the court to conclude that this percentage is not a "small or limited part" of Cardoso's profession.
 
 
 18
 The district court's decision to invalidate the non-competition clause under California law was correct. Given the court's narrow definition of Cardoso's profession--a factual inquiry entitled to clear error deference--and its finding that the restraint had more than a small impact on her ability to compete with Cass, it was not error to determine that the non-competition agreement ran afoul of Sec. 16600.
 
 IV.
 
 19
 Cass contends that, even if the district properly invalidated the non-competition clause under Sec. 16600, injunctive relief still should have been granted under an unfair competition theory. California courts have recognized that unfair competition law is broad and analytically vague. Balboa Ins. Co. v. Trans Global Equities, 267 Cal.Rptr. 787, 795 (Ct.App.), cert. denied, 498 U.S. 940 (1990).
 
 
 20
 In Balboa, the court divided unfair competition claims into four categories. The first involves non-competition agreements, the breach of which may lead to an unfair competition claim. Id. As the foregoing analysis of the non-competition clause suggests, Cardoso could not breach a void agreement, so Cass has no unfair competition claim under the first category. The second category involves the misappropriation of trade secrets. Id. Cass has not appealed the district court's denial of its trade secret claim. The third category involves the following tort theories: "breach of confidential relationship, breach of fiduciary duty, interference with prospective economic advantage, advantageous business relationships [sic], and interference with contractual relations." Id. (internal quotations omitted). This is the basis of Cass's unfair competition claim. The final category involves common law misappropriation. Id. Cass does not base its unfair competition claim on a misappropriation theory.
 
 
 21
 In Aetna Bldg. Maintenance Co. v. West, 246 P.2d 11, 15 (Cal.1952), the California Supreme Court outlined the following factors for use in determining whether a former employee was engaging in unfair competition: (1) whether the information possessed by the employee is confidential and not readily accessible to competitors; (2) whether the employee solicited the customers of the former employer with intent to injure the employer; (3) whether the employee sought out preferred customers whose identities are not generally known to competitors; (4) whether the trade is such that a customer ordinarily will patronize only one concern; and (5) whether the established business relationship between the former employer and the customer would normally continue unless interfered with.
 
 
 22
 The district court applied these factors and determined that Cass had failed to prove its claims of unfair competition. Cass contends that the court erred by applying these factors too rigidly, because California law does not require all five factors to be present. Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1331 (9th Cir.1980). However, as the district court found, Cass is unable to conclusively establish the existence of any of the Aetna factors. Instead, Cass would have this Court focus on notions of unfairness and breach of trust when evaluating its unfair competition claims.
 
 
 23
 Cass charges Cardoso with breaching her trust by "unfairly trad[ing] on customer loyalties developed at substantial expense and effort which have a personal quality and which a competitor could not enjoy without usurping the specialized knowledge such relationships yield." Cass cites Courtesy Temp. Serv. v. Camacho, 272 Cal.Rptr. 352 (Ct.App.1990); Whitted v. Williams, 37 Cal.Rptr. 692 (Ct.App.1964); and Continental Car-Nar-Var Corp. v. Mosely, 148 P.2d 9 (Cal.1944), and concludes that in all of these cases "[i]t is the breach of trust which is the essence of the action." However, the result in each of these cases depended on whether or not the former employee utilized information that could be characterized as confidential. Cass has essentially conceded that Cardoso does not possess such information by opting not to appeal the district court's trade secret ruling. The district court was correct in ruling that Cass had failed to prove its unfair competition claims.
 
 V.
 
 24
 California Civil Code Sec. 1643 requires the court to interpret a contract so as to make it "lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." California case law grants a court equitable authority to modify an existing contract in order to satisfy this statutory mandate. See State Farm Mutual Automobile Ins. Co. v. Dempster, 344 P.2d 821, 827 (Ct.App.1959) ("The court properly limited the enforcement of the contract to the exact and limited interests which equity protects."). Acting at Cass's suggestion, the district court construed the agreement narrowly, limiting its scope to prohibit solicitation of only four specified customers. Notwithstanding this limited construction, the court concluded the provision was invalid. Although the district court might have attempted to narrow the covenant not to compete even further, equity did not demand it to do so. The court did not abuse its discretion under section 1643 when it limited the agreement's application to four customers and concluded that it still violated California law.
 
 VI.
 
 25
 Cass's final argument is that the district court erred by not permitting additional discovery on the issue of defining Cardoso's profession. It contends that the district court's "market share" analysis was invalid because the court ignored a large portion of Cardoso's market. Because Cardoso acknowledged that her job potentially involved many facets of the entertainment industry, Cass sought discovery regarding the potential market share that new customers might occupy. The district court ruled that it was too late to affect its definition of Cardoso's profession and it denied Cass's request for additional discovery.
 
 
 26
 District courts have discretionary power to control the limits of discovery. Ellis v. Brothers of Ry., Airline & S.S. Clerks, 685 F.2d 1065, 1071 (9th Cir.1982), aff'd in part, rev'd in part on other grounds, 466 U.S. 435 (1984). The court did not abuse its discretion by refusing to grant Cass a second opportunity to influence the definition of Cardoso's profession by way of a supplemental discovery request. Cass already had one bite at that apple and the district court rejected its argument.
 
 
 27
 For the foregoing reasons, the district court's decision applying California law and refusing to enforce the covenant not to compete, is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Cal.Prof. & Bus.Code Sec. 16600 provides:
 "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."