[Civ. No. 17702. Fourth Dist., Div. Two. Feb. 2, 1978.]

JACK R. GREENLY et al., Plaintiffs and Respondents, v.
WILLIAM E. COOPER et al., Defendants and Appellants.

**COUNSEL**

Verlyn N. Jensen, Rutan & Tucker, Howard F. Harrison, Clifford E. Frieden and Ira G. Rivin for Defendants and Appellants.

Horowitz & Howard and Alvin F. Howard for Plaintiffs and Respondents.

**OPINION**

**MORRIS, J.**—This appeal is from a preliminary injunction enjoining defendants William E. Cooper and Louis J. Weinberger from soliciting business from certain customers of plaintiff Jack R. Greenly and the various corporations through which Greenly does business.

*Statement of Facts*

Cooper and Weinberger, key employees of Greenly's mortgage loan brokerage business for two and fifteen years, respectively, left Greenly's employ in September 1976, to form their own competing firm. The complaint, seeking monetary and injunctive relief, alleges that defendants appropriated for their own use certain confidential lists and information regarding customers as well as various forms developed by plaintiff in the course of his business, and that defendants induced other employees of Greenly to quit and work for defendants' new firm. Greenly also sought and obtained a series of provisional injunctive orders. Defendants challenge the final order of this series on several grounds: (1) that the order was issued either without proper bond or with inadequate bond, (2) that there were no trade secrets or enjoinable acts of unfair competition, and (3) that the order was uncertain and overbroad. The facts are presented in more detail as relevant to the discussion of the issues.

## I. BOND

On the day the complaint was filed the superior court issued an order to show cause why a preliminary injunction should not issue and a temporary restraining order prohibiting defendants from (1) using or copying certain lists of customers obtained from plaintiff by defendants while employed by plaintiff, and (2) soliciting plaintiff's employees to terminate their employment and become employed by defendants. No bond was required.

On November 8, 1976, at the hearing on the order to show cause the above-mentioned temporary restraining order was, by stipulation of the parties, continued as a preliminary injunction. No bond was required by the court. While a bond is generally required for a preliminary injunction (Code Civ. Proc., § 529), this requirement may be waived under circumstances where the parties stipulate to the injunction (*City of Los Angeles* v. *Superior Court* (1940) 15 Cal.2d 16, 23 [98 P.2d 207]). In

any event, the November 8 preliminary injunction is not the subject of this appeal.

Also on November 8, 1976, the court issued an order to show cause why defendants should not be enjoined from (1) using or copying certain of plaintiff's business forms and records, and (2) using any knowledge or information concerning plaintiff's business obtained while employed by plaintiff, including, inter alia, information about plaintiff's customers, loan referral sources, and methods of conducting business. The court issued a temporary restraining order covering (1) above, but declined to issue an order regarding (2) prior to the hearing on the order to show cause.

On November 10, 1976, Greenly filed a notice of motion for an additional preliminary injunction to prohibit defendants from soliciting business from certain borrowers, lenders, or loan sources whose identity or address defendants learned in the course of their employment with Greenly.

Both the order to show cause and the notice of motion were scheduled to be heard on November 23, 1976, but on that date the hearing was continued to December 3, 1976. In its minute order the court for the first time ordered Greenly to post a bond: "All Temporary Restraining Orders to remain in full force and effect. If bond not filed by 5:00 p.m., on November 29, 1976, the Temporary Restraining Order will be vacated."

The bond was timely filed and following the December 3, 1976, hearing, the court issued a preliminary injunction along the lines of the November 10 notice of motion, prohibiting defendants from soliciting certain customers of Greenly. The court, pursuant to a compromise of the parties developed at the hearing, did not issue a preliminary injunction, as requested in the November 8 order to show cause, against the use of business forms or information and knowledge about plaintiff's business acquired while in plaintiff's employ. Following some discussion of the appropriate amount of bond, the court ordered that the $1,000

bond previously filed would stand to secure this preliminary injunction as well. It is from this injunction that defendants appeal.[1]

■ Defendants first contend that the bond was posted in connection with the temporary restraining order and therefore could not serve as bond for the preliminary injunction. The bond filed states on its face that it is for "Preliminary Injunction" as provided by Code of Civil Procedure section 529. Defendants argue that the bond was filed in response to the minute order of November 23, 1976, that that order made no reference to any preliminary injunction, and that the mistaken designation of the nature of the bond by the surety should be of no consequence.

They rely on *Casitas Inv. Co. v. Charles L. Harney, Inc.* (1962) 203 Cal.App.2d 811 [21 Cal.Rptr. 821]. In that case the trial court issued a temporary restraining order against two defendants and ordered that a bond be posted. The bond posted by plaintiffs inadvertently ran in favor of not only the two defendants, but also a third defendant. The court subsequently issued a preliminary injunction against all three defendants without requiring an additional bond. In an attempt to correct this oversight, the court later issued a nunc pro tunc order providing that the original bond should continue in effect as security for the preliminary injunction. In holding that the injunction must be set aside, the appellate court noted that at the time the bond was posted, no injunction proceeding was pending against the third defendant so the bond could not conceivably be construed as running in its favor, regardless of the inadvertent designation of the third defendant as a secured party.

---

[1] In abbreviated form, the chronology is as follows:

Oct. 29: TRO issued re use of customer lists and solicitation of employees. No bond ordered.
OSC issued for an identical preliminary injunction.

Nov. 8: Hearing on Oct. 29 OSC.
Preliminary injunction issued re use of customer lists and solicitation of employees. (Basically a conversion of Oct. 29 TRO into a preliminary injunction.) No bond ordered.
TRO issued re use of forms. No bond ordered.
OSC issued for preliminary injunction re (1) use of forms and (2) use of information.

Nov. 10: Notice of motion filed for preliminary injunction re solicitation of customers.

Nov. 23: Hearing on Nov. 8 OSC and Nov. 10 notice of motion continued to Dec. 3 and $1,000 bond required (minute order).

Nov. 26: $1,000 bond filed.

Dec. 3: Hearing on Nov. 8 OSC and Nov. 10 notice of motion.
Preliminary injunction issued re solicitation of customers. $1,000 bond previously filed held sufficient for this injunction as well. (Parties agree to drop request for injunction re (1) use of forms and (2) use of information.)

In the instant case, it is not at all evident that the surety's description of the bond was the result of inadvertence. At the time bond was posted one temporary restraining order (Nov. 8, 1976) and one preliminary injunction (Nov. 8, 1976) were in effect, and a hearing was pending on the November 8, 1976, order to show cause and the November 10, 1976, notice of motion. The minute order requiring the bond provided that "All Temporary Restraining Orders" were to remain in effect. The apparent import of this language is to refer to all the provisional injunctions then in effect, i.e., the one temporary restraining order and the one preliminary injunction. The court thus intended to deal with the totality of the orders issued. Whether the undertaking filed, stating that it is for "Preliminary Injunction," suffices to actually extend the surety's liability to include damages incurred as a consequence of the November 8 temporary restraining order is a question not now before this court. We note, however, that the surety, knowing of the pendency of the action, was chargeable with knowledge of the nature of the order requiring bond. (*Yellen* v. *Fidelity & Casualty Co. of N. Y.* (1931) 115 Cal.App. 434, 436-437 [1 P.2d 1019].) Clearly though, the undertaking does, by its terms, obligate the surety in regard to the November 8 preliminary injunction.

Even if the bond had been filed only in connection with the temporary restraining order, defendants are mistaken in the contention that as a matter of law such bond cannot also serve as bond for a preliminary injunction. The two cases cited for this proposition, *Maier* v. *Luce* (1923) 61 Cal.App. 552 [215 P. 399] and *Casitas Inv. Co.* v. *Charles L. Harney, Inc., supra,* 203 Cal.App.2d 811, involve bonds that, by their terms, limited the surety's liability in some way. In holding that the bonds, which were filed in connection with temporary restraining orders, could not be used to secure preliminary injunctions, the *Maier* and *Casitas* courts were merely applying the general principle that a court is powerless to extend the surety's liability beyond the precise terms of its contract.

Defendants next contend that even if the bond provides security for the November 8 preliminary injunction, such bond cannot also secure the preliminary injunction issued on December 3, 1976. This conclusion follows, they argue, from the general principle that "sureties on statutory bonds . . . can stand upon the express terms of their undertaking, and cannot have their liability forced beyond those terms." (*Carter* v. *Mulrein* (1889) 82 Cal. 167, 169 [22 P. 1086].) This well-settled principle is inapplicable to the instant case.

The cases cited by defendants applying the above principle, *Carter* v. *Mulrein, supra,* 82 Cal. 167, *Maier* v. *Luce, supra,* 61 Cal.App. 552, *Casitas Inv. Co.* v. *Charles L. Harney, Inc., supra,* 203 Cal.App.2d 811, and others examined by this court, all involved bonds that expressly or impliedly limited the sureties' liability in a manner that precluded the respective orders of the trial courts. Although the bond in this case secured the November 8 preliminary injunction, which was in existence at the time the bond was posted, the bond is not, by its terms, limited to previously issued preliminary injunctions. The surety presumably was aware of the pendency of the hearing on the order to show cause and the motion for the preliminary injunction, yet it did not expressly limit its liability to the November 8 preliminary injunction. Under such circumstances, and mindful of the general principle of construction that doubts are to be resolved against the draftsman who caused the uncertainty (see generally, Civ. Code, § 1654; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 535, pp. 456-457), it is not unreasonable under the facts of this case to interpret the bond as applying to the pending preliminary injunctions as well as to the existing injunction, i.e., to the totality of the provisional injunctive relief sought. (Cf., *Adams* v. *National Auto. Ins. Co.* (1943) 56 Cal.App.2d 905, 914 [133 P.2d 657].)

The injunction of December 3, 1976, was but one of a series of proposed orders presented to the court by plaintiff; all of the orders involved the same parties and the same action and all had a common aim, i.e., to prevent any misuse by defendants of Greenly's trade secrets pending final disposition of the action. Although the various orders were couched in different language, they all sought to achieve this end; the November 8 preliminary injunction prohibited defendants from, inter alia, using or copying certain lists of Greenly's customers, while the December 3 preliminary injunction prohibited defendants from soliciting customers of Greenly (all of whom were recorded in the lists) whose identity or address defendants learned while in Greenly's employ. While the orders were presented to the court seriatim, they can reasonably be considered as a single package of provisional relief. Viewed in this light, and it appears from the record that it was by the parties and the court, the December 3 preliminary injunction amounts to no more than a modification or supplementation of the November 8 preliminary injunction. While a surety's obligation cannot be extended by a court beyond the terms of the surety's contract, defendants do not contend, nor could they contend with any success, that this means the trial court is powerless to amend or supplement a preliminary injunction once the bond has

been filed. (See, 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 105, p. 1536.) The instant order does not improperly extend the liability of the surety. All of Greenly's customers were recorded in the lists that defendants were already enjoined from using in *any* way, thus the order does not in that respect expand the scope of the injunctive relief. The order was designed primarily to facilitate the enforceability of the injunctive relief, not expand the realm of prohibited acts.

■ Finally, defendants contend that the trial court abused its discretion by failing to require an adequate bond. The amount of the bond is fixed by the judge, exercising sound discretion, based on the probable damage that the enjoined party may sustain because of the injunction. (See, Code Civ. Proc., § 529; *Asevado* v. *Orr* (1893) 100 Cal. 293, 298 [34 P. 777].) This court cannot substitute its own view as to the proper amount of bond, but rather will disturb the trial court's exercise of discretion only if it clearly appears to be arbitrary or capricious and exceeds the bounds of reason. (Cf., *Froomer* v. *Drollinger* (1960) 183 Cal.App.2d 787 [7 Cal.Rptr. 268]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 242-244, pp. 4234-4236.) At the hearing on December 3, 1976, the court heard and considered the arguments of counsel on the matter of the amount of bond and concluded that, inasmuch as the December 3 order largely only completed the thought behind the November 8 order, the $1,000 bond was adequate to secure both. The record does not show nor have defendants demonstrated that the court's discretion was exercised arbitrarily, and this court cannot say that the court's decision exceeds all bounds of reason. It remains within the court's discretion, if defendants can show that the amount of damages may exceed the bond, to require an additional undertaking. (See *Asevado* v. *Orr, supra,* 100 Cal. at p. 298; *Dickey* v. *Rosso* (1972) 23 Cal.App.3d 493, 498 [100 Cal.Rptr. 358].)

## II. TRADE SECRETS

■ Defendants next contend that issuance of the preliminary injunction was improper because there was no showing of protectable trade secrets or enjoinable acts of unfair competition.

Initially, we must bear in mind that our task on appeal is to determine whether there is sufficient evidence to support the court's decision, and we may not interfere with that decision except for an abuse of discretion. (See *People* v. *Black's Food Store* (1940) 16 Cal.2d 59, 61 [105 P.2d 361]; 5A C.J.S., Appeal and Error, § 1591, pp. 60-67.)

While courts of equity will protect the rights of employers in their trade secrets, the court must also be solicitous for the right of all people freely to engage in a lawful occupation and will not enjoin a former employee from soliciting business from a customer of a former employer unless there is some unfair use by such employee of business secrets that he acquired confidentially during employment. (*Continental Car-Na-Var Corp.* v. *Moseley* (1944) 24 Cal.2d 104, 110 [148 P.2d 9].)

In considering defendants' contention and determining the applicable principles of law, we are guided by a case substantially similar to the one at bar. *American Loan Corp.* v. *California Commercial Corp.* (1963) 211 Cal.App.2d 515 [27 Cal.Rptr. 243], involved an investment business, consisting principally of the purchase and sale of secured loans on real property, that is in many respects similar and related to the business engaged in by the litigants here. In that case, when the defendant employee, an officer of the plaintiff corporation, left the business he took with him certain information, including duplicates of plaintiff's card index customer list. He also sent an announcement of his new office to all those on the list classified as repeat investors and made personal contact with many of them.

The court in that case reviewed the applicable principles of law as follows: "It has been said that '. . . to obtain relief against a former employee it must be shown: (1) The information was confidential and not readily accessible to competitors; (2) The former employee solicited the customers of his former employer with intent to injure him; (3) The former employee sought out certain preferred customers whose trade is particularly profitable and whose identities are not generally known to the trade; (4) The business is such that a customer will ordinarily patronize only one concern; (5) The established business relationship between the customer and the former employer would normally continue unless interfered with.' [2] [Citations.] [¶] It has also been said that 'The fundamental difference in the decisions, as we read them, is whether in a given case the knowledge gained by an employee is secret and confidential. If it is, its use by a former employee will be enjoined. If it is not, its use by a former employee will not be enjoined. Some knowledge gained by an employee is of such a general character that equity will not restrict its later use. An employee has a right, after

---

[2] For an interesting discussion of whether this list has inadvertently been interpreted conjunctively rather than disjunctively, see Hays, *The California Law of Unfair Competition Takes a Turn—Against the Employer* (1953) 41 Cal.L.Rev. 38, 50-59 and Hays, *Unfair Competition—Another Decade* (1963) 51 Cal.L.Rev. 51, 68-69.

cessation of employment, to use anything that is not the property of his employer. Trade and business secrets and confidential information are the property of the employer and cannot be used by the employee for his own benefit. A list of subscribers of a service, built up by ingenuity, time, labor and expense of the owner over a period of many years is property of the employer, a part of the good will of his business and, in some instances, his entire business. Knowledge of such a list, acquired by an employee by reason of his employment, may not be used by the employee as his own property or to his employer's prejudice.' [Citations.]" (*Id.,* at pp. 522-523.) And to afford protection to the employer, the information need not be in writing but may be in the employee's memory. (*George* v. *Burdusis* (1942) 21 Cal.2d 153, 160 [130 P.2d 399].)

Mindful of these general principles, and resolving all conflicting evidence and reasonably deducible inferences in favor of the trial court's decision, we are satisfied that there is sufficient evidence to support it.

First, there is evidence showing that the information in question was secret and was disclosed to defendants in a confidential manner. Plaintiff Greenly filed declarations stating that the information contained on the lists taken by defendants was confidential, that it was never disclosed to anyone outside the company and was made accessible to employees of the company as necessary to accomplish their duties. Whenever documents were required to be publicly recorded, e.g., deeds of trust, typically plaintiff's address and telephone number was substituted for that of the customer.

Second, the evidence shows that the information on the lists was not readily accessible to plaintiff's competitors. Defendants argued that the names and addresses of home loan investors can be obtained from commercial services. However, it appears that such commercial lists would not include all of plaintiff's customers nor would they contain other valuable information, e.g., areas in which a customer will or will not invest, the maximum amount of investment, and loan expiration dates (enabling one to solicit the customer for additional business when the loan expires). Under such circumstances, injunctive relief was properly within the court's discretion. (See *Reid* v. *Mass Co., Inc.* (1957) 155 Cal.App.2d 293, 302 [318 P.2d 54].) Moreover, the evidence that defendants had a secretary make copies of the lists shortly before they left the business, that they misrepresented the purpose of making such copies, and that they took such copies with them when they left permits the inference that the information contained in the lists was secret and

not readily available elsewhere. As noted in *American Loan* in reference to nearly identical circumstances, "if the list was easily obtainable there could have been no reason for him to be at pains to take duplicate copies . . . ." (*American Loan Corp.* v. *California Commercial Corp., supra,* 211 Cal.App.2d at p. 523.) It would also be reasonable to infer from such evidence and evidence that some of the customers on the list were approached by defendants that defendants took the information intending to use it to the prejudice of their former employer and did so.

Regarding a contract whereby each defendant purportedly agreed, after termination of the employment, to refrain from using to his own advantage any information gained for or from the files or business of plaintiff, defendants object to the consideration of this contract on the ground that it was not properly in evidence before the trial court. In view of our conclusion that the other evidence before the court was sufficient to support its decision, it is unnecessary for us to reach the issue.

Defendants also argue that the list of customers was developed by them through their own work and initiative and that under such circumstances injunctive relief was improper. They rely principally on *King* v. *Pacific Vitamin Corp.* (1967) 256 Cal.App.2d 841 [64 Cal.Rptr. 486]. In that case the plaintiff employer, a wholesaler of sundries, sought to enjoin defendant commission salesman from using information regarding plaintiff's customers after defendant left plaintiff's employ to work for another wholesaler. In upholding the trial court's judgment denying relief, the appellate court sought to distinguish the case from the so-called "route" cases in which injunctions had been granted against the use of customer lists.

"In the over-all field of employment the route salesmen constitute a very small and unique group. It is unique because all the information and knowledge concerning the identity of the customers and their business requirements has been acquired by the salesman for the use and benefit of his employer, and is therefore the property of the latter. But a list of customers built up by an employee, who is not a part of this group, through his own initiative and efforts, without an agreement that the same is to be kept confidential for the benefit of the employer, is not a business secret of the latter. The employee, having left his employment, is free to make use of his experience and whatever he had learned in the business, as long as he does not violate his employer's confidence." (*Id.,* at pp. 846-847.)

This language is inappropriate for the case at bar, the applicable principles having been laid down, as previously discussed in *American Loan.* The facts of the *King* case are dissimilar to those in the case at bar. The trial court had found that there was no trade secret; all the information possessed by the employee was readily accessible to the trade through various public and specialized directories. Moreover, the activities of the employee in the *King* case were quite different from those of defendants here. "He was not given a 'route' book or list of customers nor any leads as to prospective customers. He was strictly upon his own in contacting retail drugstores. When he left King . . . and went with Pacific he was selling to 58 retail drugstores which he had procured as customers without assistance from King. . . . More than 40 of these customers stayed with [him] and transferred their accounts to Pacific." (*King* v. *Pacific Vitamin Corp., supra,* 256 Cal.App.2d at p. 844.) It is evident the salesman was very much an independent operator, given little assistance by his employer, whereas defendants in the case at bar worked closely with the company employing them and received much information and assistance from their employer, including the benefit of advertising.

In *Reid* v. *Mass Co., Inc., supra,* 155 Cal.App.2d 293, where there was a showing that the customer list was a trade secret, the court was confronted with the argument that the employees were in the nature of independent contractors who chose their own customers and established the business relationship between the customer and the employer and that this negated the possibility of any confidential information. The court responded, "[b]ut it does not matter that the former employee may have originally secured the customer's business for the former employer; it is the identity of the customers who have been secured that constitutes the confidential information, and 'the additional influence of the friendly contact of the former employee with the persons whose business he would carry to his new connection brings the solicitation within the condemnation of unfair competition.' " (*Id.,* at p. 302.)

### III. UNCERTAINTY AND OVERBREADTH

Defendants' final contention is that the preliminary injunction is uncertain and overbroad and therefore invalid. The injunction orders that defendants Cooper and Weinberger "and all persons acting on their behalf and all entities in which they or either of them are officers, directors or in which they have a controlling interest, be enjoined pending the trial of this matter from soliciting business as mortgage loan

brokers from past and prospective borrowers, lenders or loan sources, where such borrowers, lenders or sources identity or address was learned by said defendants and persons while in and by virtue of, or in the course of, their employment or other official capacities with Plaintiffs." Defendants argue that the meaning of the terms "controlling interest," "soliciting business," and "loan sources" is too uncertain to guide them in complying with the injunction. The first term was obviously inserted to prevent circumvention of the injunction; interpreting the language in light of this purpose (see, *City of Vernon* v. *Superior Court* (1952) 38 Cal.2d 509, 514 [241 P.2d 243]), we think it is adequate to apprise defendants of what is required of them. "Soliciting business" is a term commonly and properly used in injunctions in cases of this nature. (See, e.g., *American Loan Corp.* v. *California Commercial Corp., supra,* 211 Cal.App.2d 515, 525.) As is apparent from the nature of the litigants' business and the usage of both parties, "loan sources" means those who refer business.

■ Defendants' contention that the injunction is unconstitutionally overbroad because it prohibits solicitation by persons and entities not parties to the litigation is without merit. (See generally, *Ross* v. *Superior Court* (1977) 19 Cal.3d 899 [141 Cal.Rptr. 133, 569 P.2d 727]; *McFarland* v. *Superior Court* (1924) 194 Cal. 407 [228 P. 1033]; *Berger* v. *Superior Court* (1917) 175 Cal. 719 [167 P. 143, 15 A.L.R. 373]; *Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 653 [83 Cal.Rptr. 41].)

Finally, defendants contend that the injunction is overbroad in that it prohibits solicitation of plaintiff's customers without regard to whether such solicitation involves the use of trade secrets or unfair methods of competition. Since the trial court properly could find that the names and addresses as well as the other information regarding plaintiff's customers were confidential, the order prohibiting solicitation of such customers is not overbroad.

The order is affirmed.

Tamura, Acting P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied February 24, 1978, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied March 30, 1978.